# COMPLAINT
(for filers who are prisoners without lawyers)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2017 OCT 30 P 3:41
STEPHEN C. DRIES
CLERK

(Full name of plaintiff(s))

Carl Joseph McDaniel, #536012

v.

Case Number: 17-C-1493

(to be supplied by Clerk of Court)

(Full name of defendant(s))
WARDEN MICHAEL MEISNER;
JON LITCHER-Secretary DOC
~~WARDEN~~
~~Michael~~ Meisner, Capt. Keller,
~~Sgt. Hess,~~ C/O II Crump, ~~et al~~
~~Chambers~~

A. PARTIES

1. Plaintiff is a citizen of _Wisconsin_, and is located at
   (State)

   REDGRANITE CORRECTIONAL INSTITUTION, P.O. Box 925, Redgranite, WI. 54970-0925
   (Address of prison or jail)

   (If more than one plaintiff is filing, use another piece of paper.)

2. Defendant _Jon Litcher, Secretary of W.D.O.C._
   (Name)

Complaint – 1

is (if a person or private corporation) a citizen of (?)
(State, if known)

and (if a person) resides at (?)
(Address, if known)

and (if the defendant harmed you while doing the defendant's job)

worked for Wis. Dep't. of Corrections, P.O. Box 795, Madison, WI., 53707-7925
(Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.)

B. STATEMENT OF CLAIM

On the space provided on the following pages, tell:
1. Who violated your rights;
2. What each defendant did;
3. When they did it;
4. Where it happened; and
5. Why they did it, if you know.

Between Dec. 2015 and today, Secretary Jon Litcher reviewed each of the Inmate Complaints either affirming or denying each Rejection, Denial or affirmation. This while Plaintiff was under Warden Michael Meisner at Redgranite, WRC, Dodge, Redgranite. Jon Litcher failed to properly investigate claims of ADA Violaltions, Retaliation for successful Case(s) won against Warden Meisner, et. al., (Civil Action(s) Case Nos. 12-CV-1178-N.J. and 14-CV-53-P.P. He had repeatedly been made aware of his inactions by Ms. Peg Swan, Forum For Understanding Prisoners, (F.F.U.P.).
These inactions on Retaliation Allegations under 42 U.S.C. § 12131 Title II, 29 U.S.C. § 794, R.A., and 28 C.F.R. Part § 35.134 (a)(b). This is because Civil Action 14-CV-53 was ruled an ADA Case by Honorable Nancy Joseph (Eastern Dist. of Wis.). Then transfered to Honorable Pamela Pepper.

During settlement negotiations, Psychologist Wanda Berg had determined that my P.T.S.D. required hospitalization and treatment at WRC The Wisconsin Resource Center. Treatment was "written-in" to the settlement terms. After 5 or 6 days of constant tripping/falling staff at WRC placed me in seg. The next A.M. I went to U.W. Health Hospitals Neurology Dept who ordered a walker. I was P.R.C.'d out a few days later without any treatment because "I was too physically impaired to participate in mental health programming,"

Complaint - 2

Unit Staff at WRC were unaware of the approved transfer and scheduled classes and programming for the next few months. I was transfered 29 days later back to RGCI w/o any therapy or skills to cope with P.T.S.D. Upon return PSU reduced Mrs. Bergs therapy to once a month. Prior to transfer to WRC therapy was once a week.

Although WRC Has a handicap medium custody unit, I was not given access, I had to eat every meal in my cell for 29 days.

When RGCI Staff came to transfer me back to RGCI on Jan. 3rd, 2017, my foot with Gout was inadvertently caugh under the moulded cupholder on the door panel. I alerted staff who opened the door and my foot was released. Staff asked if I needed medical attention, I replied NO. While enrout to RGCI Cpt. Swall contatcted RGCI HSU and spoke for 20 min or so. On arrival I was taken to HSU at RGCI. R.N. Barter examined my swollen Ⓛ foot and asked if I need to go to E.R. I replied No. Barter left and spoke to HSM Doehling. R.N. Thompson returned and said "Mr. McDaniel, you know your Neuropathy can prevent you from feeling a broken bone right?" Then she told me there no X-Ray on grounds, "Please go get an X-Ray!" I agreed and was taken to Berlin Mem. Hosp. E.R. NOTE: RGCI HSU USED DR. SAUVEY'S NAME ON A STATE DOCUMENT, AFTER SHE QUIT THE WDOC ABOUT 30 DAYS PRIOR!

At Berlin, my Ⓛ foot was uncovered/bare and elevated above my heart for about 2-hours before E.R.M.D. entered. All the swelling from Gout was gone, all the redness—except for a mark above my middle toes was gone also. This was noted in the ERMD's notes. He prescribed Tramadol, Steroids, and another med for gout as it was accute. This is standard protocall for Acute Gouty Arthritis.

McDaniel, plaintiff, 42 days later was given a Conduct Report for Lying to staff. McDaniel was denied R.N. Thompson as a witness. She came to the hearing and was loudly arguing with the 2 whiteshirts who investigated. Cpt. Werner/Cpt. Hoch had the hearing officer Cpt. Albertson call Security Director Tarr, who ordered R.N. Thompson not to testify. She could explain the red mark and medical terminology that would have exhonerated the charges. The Evidence in statements approved by S/D Tarr were never given to McDaniel before or after hearing. McDaniel could not create a defense based upon evidence he couldn't examine. Staff used a "Forged" medical document to convict McDaniel. McDaniel's PTSD and Anxiety stopped his body. His pain doubled him over and chest pain stopped this proceeding. After minutes the hearing officer came on the speaker and gave McDaniel 90 days, not including 19 days TLU, while the investigation was already completed. Please note that that week McDaniel applied for "Extra Library Time" for reopening of Case No. 14-CV-53-P.R., and for Deliberate Medical Indifference. —CONTINUES—OVER—

McDaniel also had I/m Cory Anderson send medical paperwork to Madison through his mother. The day prior to TLU, on Feb. 15th@, Cory confirmed by phone, his mother spoke to an +AG. from the Justice Dept in Madison. She is liazone to the DOC. Cory told McDaniel, "sorry my mom mentioned your name on the phone. Cory was transfered the next a.m. and McDaniel was placed on TLU.

McDaniel was denied the medical mattress upon return to GCI. Despite his many handicaps that fit every criteria for medical mattresses, Disparate Treatment persisted. This was evidenced when McDaniel requested mattress through HSU on special Needs Committee approval. He was denied. However when assisting an I/m with only back surgery and none of the nerve damage, neck damage, and other maladies of McDaniel, He was given a mattress in 5 days. This I/m will certify to this. McDaniel also filled out the ADA Reasonable Accommodation Request and was denied, however rerefesral to HSU Special Needs Committee Approved the 5" mattress. Showing RGCI Refuses to acknowledge McDaniel's handicaps in any way discriminating because McDaniel is handicapped denies him proper pain medication, food, Physical Therapy, and Due Process programming and services.

McDaniel returned with a walker, Assisted Living Device, to keep from falling. He was placed back on Receiving Unit after URC. McDaniel spent more time in seg stays and returned to General Population. Unit Mgr. Muskey told McDaniel in dayroom "You have to get a 'Court-order" to get off this unit. H-North-Secure Wing is also for seg step program. McDaniel was placed on TLU prior to needing the "Court-order".

The cells in H-North-Secure-Wing have sinks and toilets. McDaniel repeatedly requested a medical cell because of falls and his walker or cane could not ensure safe access to toilet. On Jan. 2th, 2017 McDaniel fell badly hurting the Carpal-Tunnel Incision Site and hurting his back, neck, and Knee. McDaniel urinated himself and continued to loose continence until his Lumbar surgery. McDaniel's April MRI of Lumbar Spine shows slightly worse tear in L5-S1 disc. McDaniel was denied safe access to toilet/bed by Kelly Muskey/Cpt.Keller, who reviewed, though refused to see my medical files, and determined medical cell was not necessary. This was originated by ADA Accommodation request rereferred to Unit Mgr. Muskey/Cpt Keller.

During McDaniel's Step 2 in H-Secure Wing, after more falls, he requested to be placed back in seg. where he could safely access toilet with his walker. This request was granted.

On Nov. 9th, 2016, C/O II Crump made an explicit sexual remark to another I/M. I was disturbed personally by this comment and wrote an ICE complaint to a PREA violation and the ICE was Affirmed. The guidelines for prea violations state that for 90 days McDaniel and C/O II Crump wouldn't have contact.

On Dec 1st @, McDaniel was taken to Waupann Memorial for Carpal-Tunnel Surgery on ® hand. C/O II Crump was the/a transport officer. At the pre-surgery room, Crump harrassed McDaniel for @ 2 hrs prior to surgery. He asked about Law Suits, If he's a defendant, what I settled for, etc. McDaniel was on Heavy Narcotics prior to surgery, however, the constant harassment by Crump caused so much pain and anxiety that interns couldn't move McDaniel to surgical table from gurney because He cried out in pain. Anesthesiologist injected Propophal to allow movement to surgical table of McDaniel. This was Retaliation to the PREA Complaint McDaniel Won prior to trip.

In @ March, McDaniel was being taken to Waupaun Memorial Pain Clinic for 2nd spinal injection, C/O II Crump jerked McDaniel out of the wheelchair, knowing of McDaniel's Spinal Condition, causing excruciating pain. McDaniel yelled "How are you allowed to touch me being I had an S.P.N. on you?" Special Placement Needs (SPN) is to keep staff or inmates away from you that may do harm. Lt. Jaeger threatened "I'll take you off this bus if you don't shut-up!" 4 I/M's witnessed this, 2 will testify. McDaniel went and the MD ordered surgery rather than any more injections so McDaniel had even more pain returning to Seg by C/O II Crump. This is the 2nd Retaltory injustice causing pain by Crump.

On Sept. 15th, 2017 to Sept. 22, 2017, McDaniel received 3-Major Conduct Reports. These started on Sept. 15th, 2017 when McDaniel went to a Sgt. to report C/O Hall for Lying. C/O Hall overheard and wrote McDaniel a Major Lying about Staff C/R and McDaniel was seeking redress per DOC 303. C/O Hall also included threatning to sue as part of this CR.

On Sept. 22, 2017 McDaniel was in property seeking to pick-up his hobby supplies. C/O II Keys, whom 4 days earlier McDaniel complained to staff about, grabbed McDaniel's mobility impairment device-pushed it into him and stated "I told you once to move" striking McDaniel's knee with the seat. McDaniel reported this to the 2 C/O's at the guard shack who told McDaniel to tell the unit Sgt. McDaniel complied. McDaniel and I/M witness filled-out affidavits. McDaniel was taken to HSU, then put on TLU and given a Major Conduct Report for Lying to Staff. Lt. Jaeger told McDaniel "I over reacted" was the reason, & not that C/O Kies Hit McDaniel with his walker.

McDaniel was given a third C/R for Lying about staff when during the investigation McDaniel stated C/O II Granier threatened to take him to the hole for wearing a sweat shirt over his full state uniform. McDaniel did not know C/O II Granier has a brother, C/O II Granier that also works at RGCI. McDaniel was refused to see pictures of the C/O II Granier and from McDaniel's mental Cognitive difficulty and easily confused, McDaniel was given a 3rd major C/R for Lying to staff.

McDaniel faced 120+ PRC to Maximum Custody on each C/R charge. McDaniel's health and mental Anxiety forbade the potential 360 so McDaniel under duress took the 120+ PRC to Max. On Oct. 11th, 2017 the WDOC PRC Committee met but could not find justification to send McDaniel to Max Custody. They asked to reconvien, and to date have not decided

Let it be known to this Court: Warden Michael Meisner had instituted a "Weekly-meeting" with a Whiteshirt following transfer in Dec. 2015 to RACI to alleviate tention between staff and McDaniel to prevent relitigation against DOC staff. This contact has led to the nearly 27 Conduct Reports and 10 r so Seg placements in 19 month in G.P. at RACI.

This "Weekly-meeting" is, McDaniel found out later, is an old staff tecqunique that mirrors the "Keep-a-diary" of how you feel. Then Security reviews comments, looks for anomolies, gives Conduct Reports for comments or seg placements. This also corresponds to the last week Capt. Keller was my weekly contact.

Capt. Keller, since Jan. 2017 return to RACI and prison, had been McDaniel's weekly-contact. Since Jan 2017 McDaniel had weekly requests to have Inmate help litigating. This went on for months and never appeared. However the 2nd week of Sept, because of a minor C/R, McDaniel pushed for this litigation help because of McDaniel's Fibromyalgia, Insomnia, Depression's Cognitive Issues, Hyperparathyroidism's Mental Changes, And Untreated Pain all disallowing McDaniel Abstract thought or memory recall and inability to process law or orders. Capt. Keller on Sept. 15th, 2017 passed the weekly responsibility to Lt. Jaeger. McDaniel has met four times with Lt. Jaeger and has yeilded 3 major C/R's.

) McDaniel has tried 3 times to litigate. The 2nd week of Jan., 2017, when Atty. Joseph R. Cincotta (Atty. for Case No. 12-cv-1178-uf) who 'called' Jan @ 13th, 2017 and McDaniel received 3 Conduct Reports in 6-days, 2-for lying, 1-for disobeying orders/disrespect.

) McDaniel then restarted on his own when Atty. Cincotta never followed through, the 1st week of Feb., 2017, McDaniel placed two "Extra Legal Library" time requests to security for the "Reopening of Case No. 14-CV-53-PP, and Deliberate Medical Indifference. McDaniel was given --days time begining @ Feb 13th, 2017. McDaniel went 2 days. McDaniel also sent medical package to Cory Anderson's Mother to send to Madison. Cory Confirmed that his mother spoke to AAG Leason to WDOC on Feb. 15th, 2017. McDaniel's name was mentioned on open phone line. McDaniel was taken to THU/Seg and given Lying C/R from 42 days prior - Jan 3, 2017. Cory was transfered to minimum Custody the next A.M. McDaniel was denied Substantive Due Process Rights and convicted as stated above.

) McDaniel received a minor C/R for disobeying orders, on or about Sept., 1st week. McDaniel could not get out of bed from pain from back surgery and Fibromyalgia to go to HSU to take Narcotic Pain meds. The C/O came to cell and waved, McDaniel waved Back. McDaniel did not have his bilateral Hearing Aids or Glasses on when C/O was at door, so McDaniel waved Back, lied down and rested. McDaniel forget where, when, what day it is, names, room key, where he's going due to mental and physical Illnesses. Later, the C/O came back, opened the door this time and said "you got a C/R, go to th desk Sgt." I complied. The desk Sgt. was taking McDaniel's Statement about ADA DAI 308.00.25, Due Process, and how I/M's cannot be given C/R's if their disabilities prevent compliance, but McDaniel had to urinate. The Sgt. told him that if McDaniel left this desk he is refusing a statement. Sgt. Murphy excused McDaniel, McDaniel returned and a 5-day Loss of cell was already inacted. -NEXT-

R.N. Barter O.K.'d the Sanction of 5-days loss-of-cell despite the recent Major back surgery, Fibromyalgia, untreated Diabetic Neuropathy, etc... McDaniel was spending @ 95% of every day on his orthopedic mattress in severe pain. R.N. Barter intentionally overstepped Dr. Paul's (Microneurosurgeon-Back) orders to Rest and Activity as tolerated. McDaniel struggled and twice had Inmates get Staff because McDaniel could not go to desk to ask to lie down. McDaniel appealed the C/R on ADA basis and lost.

③ This incident provoked McDaniel to respectfully re-ask Capt. Keller to assign an inmate who McDaniel knows, and won't try to charge McDaniel money, to help McDaniel re-open Case No. 14-CV-53-PP. This was the week prior to Sept. 15, 2017 C/R and the 2 on Jan 22nd, 2017.

The timing, coincidence on fact that the "weekly meetings" where McDaniel is "Required" compliance to Warden Meisner's Directive to "Discuss any staff issues that are bothering you" and the fact that Security has Physical and Psychological Profiles on every inmate create conditions where Staff can ad hoc any scenario to suit their needs. Their need in McDaniel's case is to stop McDaniel before he changes any more policies or gets anymore staff fired or in trouble with the State.

McDaniel found-out Friday Oct 20th, 2017 that he has Antisocial Personality Disorder. RGCI Staff have known this and its symptomology for years. Ms. Berg, Psychologist, made it known to McDaniel that his ASPD has two significant features: Hostility, Significant Irratability, agitation, aggression and violence; and "Failure to Consider the Negative Consequences of behavior or learn from them", hence Staffs innate ability to give C/Rs or Seg whenever litigation becomes real. (MAYO-CLINIC-WEBSIGHT)

McDaniel has Fibromyalgia (partially treated-Savella, not the Insomnia or Fatigue), Hyperparathyroidism, Recent Major Back Surgery (RGCI Refuses to allow Physical Therapy In Seg) despite Doctors orders, Diabetes Type II - But because of inability to exercise - now requires medication, Chronic Kidney Disease-Stage III, COPD, Asthma, Cervical Spine Arthritis (5-bulging discs requiring treatment), P.T.S.D., Gout, Graves Disease, Balance Issues, Diabetic Neuropathy-Completly untreated, Hypertension, Hyperlipidemia, Substance Abuse History and at all times were relevant during the above events. Also Narcissistic Personality Disorder.

The Substantitive Due Process Violation is because in Seg for @ 90 days McDaniel was not given an orthopedic or decent mattress while Staff knew McDaniel was scheduled for Lumbar Surgery, that McDaniel was Loosing continance and that McDaniel was in excruciating pain. McDaniel also Lost Litigation time to find help.

C.  JURISDICTION

☒ I am suing for a violation of federal law under 28 U.S.C. § 1331.

~~OR~~ AND

☒ ~~I am suing under state law. The state citizenship of the plaintiff(s) is (are) different from the state citizenship of every defendant, and the amount of money at stake in this case (not counting interest and costs) is $_____.~~

D.  RELIEF WANTED

Describe what you want the Court to do if you win your lawsuit. Examples may include an award of money or an order telling defendants to do something or to stop doing something.

Please stop the Retaliating for successfully litigating, please place McDaniel immediately back in Med. Custody, General, G.P., Population. Please exhonorate the retalitory Conduct Reports. Please give a Declaratory Judgement stating that McDaniel is ADA Qualified under 29 U.S.C. § 12131(a) and (b). Please return McDaniel to Medical Cell in G.P. Please allow McDaniel Access to all parts of programs, services, and please allow McDaniel eventual transfer as Psychologist Ms. Wanda Berg sees fit.

Please compensate Plaintiff in the ammount of $500,000.°° for pain, and $500,000.°° for suffering under Warden Meisners staff as a whole.

Please allow compensatory damages at the Jury sees fit to be donated to F.F.U.P.

Please appoint Counsel to direct McDaniel as his litigation skills are severely compromised.

Complaint – 4

E.  JURY DEMAND

I want a jury to hear my case.

☒ – YES  ☐ – NO

I declare under penalty of perjury that the foregoing is true and correct.

Complaint signed this 22nd day of October 20 17.

Respectfully Submitted,

_____
Signature of Plaintiff

#536012
Plaintiff's Prisoner ID Number

Redgranite Correctional Institution

P.O. Box 925, Redgranite, WI., 54970-0925
(Mailing Address of Plaintiff)

(If more than one plaintiff, use another piece of paper.)

**REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FULL FILING FEE**

☐ I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a Request to Proceed in District Court without Prepaying the Full Filing Fee form and have attached it to the complaint.

☒ I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, ~~and I have included the full filing fee with this complaint~~. The Filing in Full will be sent to RGCI Staff for Approval today and Clerk of Courts will receive it shortly. Thank You

536012

Complaint – 5