UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CARL JOSEPH McDANIEL,

    Plaintiff,

v.                                        Case No. 17-C-1493

WISCONSIN DEPARTMENT OF
CORRECTIONS, SUSAN NOVAK,
MICHAEL FINK, and DR. SALAM
SYED,

    Defendants.

---

## SCREENING ORDER

---

Plaintiff Carl Joseph McDaniel filed this lawsuit in October of 2017. The court screened the complaint and found it did not state a claim. The court gave McDaniel time to file an amended complaint, which he eventually did. The court struck it, again finding that it did not state a claim. Rather than giving McDaniel another chance to amend the complaint on his own, the court recruited counsel to help McDaniel with the limited task of drafting an amended complaint. That complaint is now before the court for purposes of screening, along with several other motions McDaniels filed and a motion from the yet-to-be-served defendants.

**A. Screening of the complaint**

    **1. Screening Standard**

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To proceed under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the defendant was acting under color of state law. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court gives a pro se plaintiff's allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**2. Allegations in the Complaint**

**a. Medical History**

McDaniel is currently an inmate at Columbia Correctional Institution (CCI). The Department of Corrections is responsible for the operation of the state's prisons, including CCI. Susan Novak is the Warden at CCI, and Michael Fink is a supervisor there. Dr. Salam Syed works as a physician at CCI.

McDaniel had multiple medical problems before entering prison. They have worsened during his incarceration. Pursuant to a settlement in a prior lawsuit in this District (*McDaniel v. Meisner*, No. 14-CV-53), Richard E. Fuller, M.D., conducted a comprehensive medical assessment on November 9, 2016. Dr. Fuller prepared a report that summarized McDaniel's medical conditions, including fibromyalgia, degenerative disc disease, diabetes and diabetic neuropathy, kidney disease, hypertension, GERD/peptic ulcer disease, and hyperthyroidism.

An April 12, 2017 MRI of McDaniel's lumbar spine showed degenerative changes at several locations with moderate spinal stenosis and slight progression at L3–4 and L5–S1. McDaniel had an MRI of his cervical spine on July 5, 2017, which showed multiple disc protrusions. Both MRIs occurred at Waupun Memorial Hospital. On April 20, 2018, John K. Choi, M.D., at Waupun Memorial Hospital Department of Pain Management – Center for Pain Care performed "Cervical Interlaminar Epidural Steroid Injection Under Fluoroscopy" to address McDaniel's pain from his degenerative spine condition. Dr. Choi recommended that McDaniel return for further treatment. Defendant Dr. Syed has not authorized further visits to Dr. Choi. The same day he performed the steroid injection, Dr. Choi completed an "Off-Site Service Request and Report" form, recommending "please put [McDaniel] in cell with no top bunk bed."

McDaniel saw Laura J. Maursetter, D.O., a nephrologist with the UW Helaht Fitchburg Kidney Clinic, on April 23, 2018. Dr. Maursetter noted that McDaniel had a history of chronic pain, had no feeling below the waist, and was incontinent of bowel and bladder. She assumed McDaniel was in a single cell, and she recommended a single cell so that he would be able to do "timed voiding" to address his incontinence. The various medical providers sent copies of Exhibits 1–6 to Redgranite Correctional Institution (where McDaniel was previously confined) and CCI. Exhibits 1–6 are,

3

respectively: Dr. Fuller's medical assessment dated November 9, 2016; the MRI report from the April 12, 2017 MRI of McDaniel's lumbar spine; the MRI report from the July 5, 2017 MRI of McDaniel's cervical spine; Dr. Choi's procedure note from the April 20, 2018 steroid injection; Dr. Choi's "Off-Site Service Request and Report" form; and Dr. Maursetter's visit note from April 23, 2018.

As Dr. Maursetter noted, McDaniel is incontinent of both bladder and bowel because of diabetic neuropathy. It has gotten worse over time, and McDaniel has used an adult diaper when he leaves his cell since 2017. His diabetic neuropathy also affects his ability to walk and negotiate obstacles, like stairs, and it has also gotten worse over time. His other health conditions have also worsened. McDaniel has filed numerous grievances and health services requests, as well as sent other correspondence, informing defendants Dr. Syed and Michael Fink.

### b. The "Stair Unit" Issue

Prior to December 6, 2017, McDaniel was incarcerated at Redgranite Correctional Institution (RGI). When he was transferred to Waupun Correctional Institution (WCI), medical staff evaluated his ability to navigate stairs safely and without significant pain. Staff found it would be inappropriate to house McDaniel somewhere that would require him to climb and descend stairs. He was immediately transferred to CCI because of that determination. During his first month at CCI, McDaniel's unit did not have stairs and had more accessible features. He regularly participated in inmate programs and activities, such as church services, bible study programs, music groups, and recreation. He was also able to make his way to the group dining area and eat regular meals, as well as manage his digestive, bowel, and bladder functions reasonably well. After the first month, McDaniel was transferred to a different unit—HU-1—which is a "stair unit." He immediately requested a change, and he was temporarily moved to HU-6, which is an "elevator unit." Within days,

he was moved to HU-8, another "stair unit." McDaniel is currently housed in HU-9, which is also a "stair unit."

HU-9 has a stairway with six stairs that he must navigate to receive daily medication, perform diabetic blood tests, request a shower, access the dining area, and access programing and activities. McDaniel must ascend and descend those stairs at least four times a day to retrieve his daily medication and three meals. He should also be doing four daily diabetic blood tests, but they do not coincide with daily medication or meal times, so that doubles the number of daily round-trips. Participating in any programming or activities would require more trips up and down the steps, as well as a lengthy walk to that area of CCI. McDaniel often experiences so much back pain that he does not attempt the stairs. That means he does not receive his medication and misses all three meals. When he does use the stairs, he often experiences such extreme back pain and nausea that he must lie down in his cell after just one trip, resulting in him not using the stairs again that day and then missing medication, blood tests, and/or meals that day. He feels unsteady even with the walker CCI has authorized him to use.

Since being on his current unit, McDaniel has frequently missed his daily medications and blood tests and he has missed approximately 500 meals. McDaniel instead relies on snacks and other less healthy food from the commissary. Missing so many regular meals and the lack of a healthy diet has exacerbated McDaniel's diabetes and other medical issues. On the occasions he has been able to do a diabetic blood test, he has often been outside of the proper range of 80–100; several readings were 300 since being in his current housing unit and missing regular meals. McDaniel is frequently nauseous and often experiences severe stomach pains from both hunger and the type of food he can obtain from the commissary. In addition to missing meals and medication, McDaniel has also missed out on

5

programming and activities. McDaniel has submitted numerous grievances, health service requests, and reasonable accommodation requests, as well as other correspondence regarding the issues he has been experiencing as a result of his housing unit. Defendants Novak, Finn, and Syed are aware of this information and have the authority to transfer McDaniel to a unit without stairs.

### c. The "Cell" Issues

In addition to being on a "stair unit," McDaniel's cell itself has various features that exacerbate his medical conditions and make his living conditions, according to the complaint, inhumane. Despite Dr. Choi's April 20, 2018 recommendation that McDaniel be placed in a cell without an upper bunk, his current cell has both a lower and an upper bunk. McDaniel has to use the lower bunk due to his medical conditions. Because of the upper bunk's placement, his own size, and his inability to bend his back and neck, he strikes his head or neck when he tries to enter or exit his bunk. This causes more pain, further preventing McDaniel from being able to move about the cell, walk around the unit, or use the stairs.

The toilet in McDaniel's cell is not the right height and does not have grab bars. This makes it more difficult for McDaniel to manage his incontinence. McDaniel has to extricate himself from his bunk, making the pain worse and making him more unsteady as he moves from his bunk to the toilet. Sometimes he falls going from the bed to the toilet; sometimes he falls off the toilet. He is frequently unable to complete the process before becoming incontinent. McDaniel also alleges that the toilet in his cell in his previous housing unit, HU-8, also was the wrong height and did not have grab bars. While there, McDaniel lost his balance and fell off the toilet, striking his mouth on the sink. He cracked one of his molars, which had to be extracted.

6

McDaniel's incontinence often results in his clothing or bedding being soiled with urine and fecal matter, which he is forced to wash in the sink. The cell's sink, made for hand washing and teeth brushing, is not appropriate for washing soiled clothing and bedding. His incontinence also often results in urine and fecal matter on the cell floor. McDaniel cannot clean it because of his disabilities and because he is not provided with suitable cleaning supplies. These issues cause disputes with his cellmates. Additionally, McDaniel's cellmates sometimes step on him while entering or exiting the upper bunk, worsening his back and neck pain.

Dr. Maursetter recommended that McDaniel have a single cell. Having a cellmate makes it more difficult for McDaniel to manage his bowel and bladder functions. Because of his neuropathy, he has little to no warning and his need to use the toilet is often sudden and urgent. If his cellmate is using the toilet, McDaniel is very likely to be incontinent. McDaniel has submitted numerous grievances, health service requests, and reasonable accommodations requests, as well sent other correspondence about the issues with his cell. Defendants Novak, Fink, and Syed are aware of this information.

McDaniel seeks preliminary and permanent injunctive relief.

**3. The Court's Analysis**

McDaniel has stated two claims in his complaint. His first claim arises under the Americans with Disabilities Act (ADA), and the second arises under the Eighth Amendment's proscription against cruel and unusual punishment.

The ADA applies to prisons and prisoners. *Cassidy v. Ind. Dep't of Corr.*, 199 F.3d 374, 375 (7th Cir. 2000). To state a claim under the ADA, a plaintiff must establish (1) that he is a qualified individual; (2) with a disability; (3) that he was denied access to services, programs, or activities of a

7

public entity or otherwise discriminated against by that public entity; and (4) that the denial or discrimination was because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (internal citations and quotations omitted). McDaniel alleges he suffers from multiple medical conditions and disabilities, notably fibromyalgia, degenerative disc disease, and diabetic neuropathy. He also alleges that because he is on a stair unit in a shared cell with an upper and lower bunk, he is not able to attend various activities, such as bible study, or even get to meals or to his medication, and he alleges that his disability is the reason he is unable to do those things. He has therefore stated a claim against the Department of Corrections under the ADA.

In order to state a claim that the conditions of confinement in a jail or prison violate the Eighth Amendment's prohibition against cruel and unusual punishment, there must be (1) "a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of "the minimal civilized measure of life's necessities,' " and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Prison conditions may be unconstitutionally unacceptable if they "pose a 'substantial risk to inmate health or safety.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Farmer*, 511 U.S. at 837).

In his complaint, McDaniel alleges that being in a "stair unit" in a cell with a top bunk and a toilet that is the wrong height and lacks grip bars not only poses a risk, but actually causes him harm. He also alleges that he filed grievances, requests, and correspondence about these issues and that Novak, Fink, and Syed knew the conditions he was, and is, subjected to in his current unit and cell. He therefore states a claim against Novak, Fink, and Syed. The Amended Complaint filed on

McDaniel's behalf names each of the defendants in their official capacities, seeking only injunctive relief.

**B. Motion to Screen Complaint and for Extension of Time**

The Wisconsin Department of Justice has not yet accepted service on behalf of any of the defendants because the court has not yet screened the recently-filed amended complaint and ordered service on the defendants. This order, however, does just that. The court denies the motion as moot. The defendants will be served with the amended complaint and afforded the usual 60 days to file an answer or otherwise respond.

**C. Motions to Include Affidavit**

In the past five weeks, McDaniel has filed eight separate motions asking to the court to "include affidavit." ECF Nos. 53, 54, 55, 56, 58, 59, 60, and 62. Most of these motions contain additional allegations against staff at CCI, specifically Dr. Syed and Fink. ECF Nos. 53, 54, 55, 56, and 59. The court will deny these motions because all of McDaniel's allegations should be in a single document, not piecemeal throughout the docket. This ensures not only that the defendants know what claims McDaniel is bringing against them; it also ensures that all of McDaniel's claims are addressed by the defendants and the court. The court will also deny ECF No. 60 because it is the same as ECF No. 55.

McDaniel's most recent motion asks the court to consider the evidence he has included with the motion—Dr. Maursetter's visit notes and two lab reports. At this time, McDaniel does not need to produce evidence. Furthermore, the court already has Dr. Maursetter's report as it was attached as an exhibit to the complaint, though the court does not consider it "evidence" at this stage of the proceedings. After recruited counsel filed an amended complaint, McDaniel filed another motion to

9

"include affidavit," this time asking the court to "leave open" his request for damages. ECF No. 58. As it stands, the amended complaint seeks only injunctive relief, not damages. However, the appropriate vehicle for addressing McDaniel's concern is not through motion but instead through the filing of an amended complaint. The court denies the motion.

**D. Conclusion**

**IT IS THEREFORE ORDERED** that McDaniel's motions to include affidavit (ECF Nos. 53, 54, 55, 56, 58, 59, 60, and 61) are **DENIED**. But given McDaniel's desire to seek monetary damages from the defendants in their individual capacities and the renewed request for a preliminary injunction, the **Clerk is directed to set this matter on the Court's calendar for a telephone conference with counsel and Mr. McDaniel within the next two weeks to address these issues. Counsel for the defendants should advise the institution of the need to accommodate McDaniel to the extent necessary for him to be able to participate in the telephone conference.**

**IT IS FURTHER ORDERED** that the defendants' motion for a screening order and extension of time to respond to the amended complaint (ECF No. 61) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendants Wisconsin Department of Corrections, Susan Novak, Michael Fink, and Dr. Salam Syed.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the defendants file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility. If plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO CHAMBERS. It will only delay the processing of the case.

The court advises plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin, this _19th_ day of November, 2018.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court